IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EILEEN MERCER,<br><br>        Plaintiff,<br>   v.<br><br>FAVORITE HEALTHCARE STAFFING, INC.,<br><br>        Defendant. | Case No. 22-cv-766<br><br>Judge Jorge L. Alonso |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eileen Mercer ("Plaintiff") brings a three-count complaint against Defendant Favorite Healthcare Staffing, LLC[1] ("Defendant") for violation of three sections of the Illinois Whistleblower Act, 740 ILCS 174/1, *et seq*. ("Whistleblower Act"). Plaintiff's claims stem from her demobilization as a lead registered nurse at a mass vaccination site and six-month suspension from higher paying "crisis contracts" with Defendant. Defendant moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court denies Defendant's motion.

---

[1] While the complaint names Favorite Healthcare Staffing, Inc., Defendant contends that the proper defendant is Favorite Healthcare Staffing, LLC.

I. **Background**[2]

Defendant is a national staffing agency that provides healthcare workers for a variety of medical purposes. On approximately February 24, 2021, Plaintiff began employment with Defendant as the Lead Registered Nurse ("LRN") at a mass vaccination site in Tinley Park, Illinois. Shortly thereafter, in March 2021, Defendant transferred Plaintiff to Des Plaines, Illinois (the "Site") to help open a mass vaccination site. Her "state crisis" employment contract with Defendant was extended multiple times and ultimately extended through June 20, 2021. (Compl. ¶¶ 10, 15 and 20, ECF No. 1-1.) Generally, crisis contracts generate more income and higher pay rates than other nursing contracts.

On May 17, 2021, during a daily staffing call with Cook County, Jackie Boone, a Cook County employee that oversees staffing at all vaccination sites, advised all LRNs from all sites that the vaccination numbers were dropping and that they should monitor and limit staffing and overtime hours. Ms. Boone advised that if vaccination numbers did not justify the staffing and hours, then overtime and additional staffing should not be scheduled. That same day, Plaintiff emailed an employee from Cook County Health ("CCH"), Ratna Kanumury, regarding Licensed Practical Nurses ("LPNs") at the Site, stating:

> Good morning, just wondering if you could please clarify the LPNs contracts for me? Are the LPNs allowed to take personal days off (not including sick days) during this contract? We have had several LPNs taking days off to travel home for

---

[2] Most facts in the "Background" section come from Plaintiff's complaint, and the Court assumes Plaintiff's factual allegations are true for purposes of this motion to dismiss. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). Further, the Court considers "not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" as well as "additional facts set forth in [briefing], so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quotations and punctuation omitted). "To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Id.* (citation omitted).

> a weekend or other personal reasons. This past Saturday I had 4 LPNs off for personal days and Saturdays are our busiest day. The onsite for Favorite advised me that they are all allowed to take personal days.
>
> Also, we are short LPNs. I believe currently we are short 5 LPNs. Is it possible to pull LPNs from other sites within Cook County that may be downsizing so that they already have access to the system and do not have to go through any orientation?

(Compl. Ex. 1 at 4, ECF No. 1-1.) By that time, vaccinations had decreased "between 800 and 1200 per day." (Compl. ¶ 27, ECF No. 1-1.) Although Plaintiff alleges in her complaint that there were LPNs "sitting around without services to render" and many "were sent back to their hotels early yet paid for the full day" (*id*. ¶¶ 26-27), she does not allege that she conveyed these specific concerns to anyone.

That same day, Ms. Kanumury replied to Plaintiff's email by adding in Major Maureen Didonato, the "National Guard Liaison with" with the Illinois Emergency Management Agency ("IEMA"). (*Id*. ¶¶ 23 and 30.) Shortly thereafter Major Didonato replied to Plaintiff as follows: "Good Afternoon Eileen, I am including my contract team as I will be off orders soon and wanted them to have communicated with you on changes at Cook County. Bottom line, if you need 5 LPNs please respond to this email and we will transfer them from our standby CVATs 23 or 24." (*Id*. ¶ 24 and Ex. 1 at 3, ECF No. 1-1.)

On May 18 Plaintiff responded to all included on the email that Plaintiff was advised by Rafik Brooks, Defendant's local LPN on-site supervisor, that the Site was being sent five backfill LPNs as well as six additional LPNs from the Tinley Park site, and further stated: "With our numbers being this low we will be way over staffed with LPNs if we get all 11." (Compl. ¶¶ 28-29 and Ex. 1 at 2-3, ECF No. 1-1.) Included on the email were a number of representatives of Cook County government, Cook County Health organization, the National Guard, Air Force, IEMA, and Defendant.

3

Plaintiff received an email the following day from Jesse Massie, an employee of Defendant, stating: "It is not your place to be the judge on if a site is over staffed or not. Please stop communicating with IEMA. If you have any concerns like this again [c]ome to me or one of the individuals that are CC['d] in the email." (Compl. ¶ 31, ECF No. 1-1.) Each person copied on Ms. Massie's email were Defendant employees. After a history of Plaintiff communicating and coordinating with multiple parties, including IEMA and Cook County, this was the first email to Plaintiff requesting that outsiders be excluded. Shortly thereafter Sean Piper, Defendant's "state representative," went to the Site and requested a private conversation with Plaintiff. (*Id*. ¶ 34.) Plaintiff requested that the Site director from Cook County, Brian Marshall,[3] be included in the meeting, but Mr. Piper refused, stating: "No absolutely not, what happens in Favorite stays in Favorite." (*Id*. ¶ 35.) Mr. Piper further told Plaintiff she was receiving a written counseling regarding her "unprofessional behavior" for sending the May 18 email to IEMA regarding staffing. (*Id*. ¶ 36.)

On May 24, 2021, Mr. Brooks notified Plaintiff that IEMA was going to start downsizing staff at the Site. While some LPN contracts were not going to be extended, RN staffing was not being downsized at that time. On June 7, 2021, however, Plaintiff received a text message from Defendant stating: "This message serves as a written confirmation of demobilization due to client request [*sic*] this will result in a 6 month suspension from our crisis contracts, you can still contact your local branch for traditional shifts in your area." (*Id*. ¶ 40 and Ex. 2, ECF No. 1-1.)

Plaintiff contacted Ms. Boone the next day, who advised Plaintiff that neither she nor Cook County made the request for demobilization. Mr. Marshall similarly told Plaintiff that he

---

[3] The complaint uses various spellings of the Site director's surname, including "Marshall" and "Marshal," and so the Court only uses "Marshall" for ease of reference.

was unaware of any negative issues regarding her employment until Defendant advised him Plaintiff was being demobilized. He further told Plaintiff that he and Cook County tried to convince Defendant to keep her, but employees of Defendant advised him that Plaintiff was an employee of Defendant and the decision was Defendant's.

On June 8, 2021, Defendant hired a new LPN to replace Plaintiff. One of Defendant's employees, Lisa Murray,[4] called Plaintiff to explain why she was demobilized and the origin of the request. Ms. Murray stated that "it was not Cook County or anyone from Cook County" and that Plaintiff's demobilization and suspension was Defendant's decision. (Compl. ¶ 47, ECF No. 1-1.) Ms. Murray stated that Plaintiff was counseled in the past and when Plaintiff asked when, Ms. Murray replied, "something happened on June 2, 2021." (*Id*. ¶ 48.) Plaintiff responded that the counseling from Mr. Piper occurred on May 19, not June 2. Ms. Murray was unable to find any other incidents of prior counseling but agreed that counseling was not appropriate for the May 18 email. Ms. Murray further stated that Defendant has a "zero tolerance policy." (*Id*. ¶ 51.)

Plaintiff alleges that on information and belief, Defendant's income is "generated by taking a portion of the percentage of the hourly income of the employees it staffs on each project" (*id*. ¶ 6), and that the funding for vaccination sites is provided by the State of Illinois, Cook County, and the United States government, including the Coronavirus Aid, Relief, and Economic Security Act (*id*. ¶¶ 8-9).

Plaintiff asserts three counts under the Whistleblower Act, alleging that she had reasonable cause to believe that the information she disclosed in her May 18, 2021, email to

---

[4] Plaintiff's complaint spells Lisa's surname at various times as "Murray," "Murry," and "Murphy." Given the context of the allegations the Court assumes that Plaintiff is using various misspellings to refer only to one person in reference to the alleged June 8, 2021, phone call, and so uses only "Lisa Murray" for ease of reference.

numerous government representatives regarding intentional overstaffing is a violation of a state or federal law, rule, or regulation. Plaintiff alleges that Defendant retaliated against Plaintiff by demobilizing and suspending her for disclosing overstaffing to prevent defrauding the government and overcharging state, local, and federal funds for unnecessary services, in violation of Sections 15 and 20.1 of the Whistleblower Act (Count I and Count III, respectively). Plaintiff further alleges that Defendant has a policy that prevents employees from disclosing information to a government agency in violation of Section 10 of the Whistleblower Act based upon Mr. Piper's statement, "No absolutely not, what happens in Favorite stays in Favorite" (Count II).

Jurisdiction is proper over this action removed from the Circuit Court of Cook County, Illinois, because the amount in controversy exceeds $75,000 and the parties are completely diverse. 28 U.S.C. §§ 1332, 1441 and 1446(a). Plaintiff is a citizen of Wisconsin and Defendant is a citizen of Delaware. (Notice of Removal ¶ 3-10, ECF No. 1; Compl. ¶ 4, ECF No. 1-1.)

## II. Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration marks omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.at 556). All reasonable inferences must be drawn in favor of the non-moving party. *Vesuvius USA Corp. v. Am. Com. Lines LLC*, 910 F.3d 331, 333 (7th Cir. 2018). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

**III.    Discussion**

The Whistleblower Act "was created to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers." *Harris v. City of Chicago*, 479 F. Supp. 3d 743, 751 (N.D. Ill. 2020) (quotation and internal punctuation omitted). Plaintiff relies on three sections of the Whistleblower Act: 740 ILCS 174/10, 15(b) and 20.1. Section 10 prohibits an employer from making, adopting, or enforcing "any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/10.

Section 15(b) prohibits an employer from retaliating "against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable

7

cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b).

Section 20.1 provides that "[a]ny other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1. Section 20.1 was added to the Whistleblower Act in 2009 to show that "retaliation is not limited to defined acts but rather includes any act materially adverse to a reasonable employee, within or without the workplace." *Harris*, 479 F. Supp. 3d at 750 n.5.

Defendant argues that all three counts under the Whistleblower Act should be dismissed. Specifically, Defendant argues that Plaintiff's comment that a state-operated vaccination site would be "way over staffed" with nurses placed by Defendant (Counts I and II) is not protected activity because it did not mention ill intent, wrongdoing, or illegal activity. Defendant further argues that Defendant's alleged policy of prohibiting third parties from sitting in on closed-door disciplinary meetings (Count II), even if true, does not violate the Whistleblower Act because it does not prevent employees from reporting wrongdoing to government agencies outside of the closed-door meetings.

There are few controlling cases interpreting the asserted sections of the Whistleblower Act. Nonetheless, "[i]f the language of a statute is clear and unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *United States v. Rosenbohm*, 564 F.3d 820, 823 (7th Cir. 2009) (citation and internal punctuation omitted). With this principle in mind, the Court addresses each of Defendant's arguments in turn.

### A. Section 15(b) and Section 20.1 (Counts I and III)

Under Section 15(b), an employer may not retaliate against an employee if the employee discloses information she has "reasonable cause to believe" is "a violation of a state or federal law, rule or regulation" to "a government or law enforcement agency." *Id*. "What matters is whether a plaintiff's belief that the law had been violated was *reasonable,* not whether it was correct." *Coffey v. DSW Shoe Warehouse, Inc.*, 145 F. Supp. 3d 771, 778 (N.D. Ill. 2015) (citing *Stebbings v. University of Chicago*, 726 N.E.2d 1136, 1144 (Ill. App. Ct. 2000)) (emphasis original)*; see also Brown v. Biomat USA, Inc.*, No. 20-CV-05437, 2021 WL 3187599, at *3 (N.D. Ill. July 28, 2021).

Under Section 20.1 the employee must "disclo[se] or attempt[ ] to disclose public corruption or wrongdoing." Unlike section 15(b), section 20.1 does not specify to whom the employee must disclose that information. The Whistleblower Act does not define "public corruption" or "wrongdoing." Unless words are otherwise defined in a statute, "they will be interpreted as taking their ordinary, contemporary, common meaning." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (quotation and internal punctuation omitted).

The parties agree that the disclosure at issue is Plaintiff's May 18 email to numerous representatives of Cook County government, CCH, the National Guard, IEMA, and Defendant stating: "With our numbers being this low we will be way over staffed with LPNs if we get all 11." (Compl. ¶ 29, ECF No. 1-1.) Defendant does not argue that the recipients are not government or law enforcement agencies, or that there are no allegations of retaliation or materially adverse employment action. Furthermore, the parties appear to agree that Plaintiff is an "employee" and Defendant is an "employer" within the meaning of the Whistleblower Act.

Instead, Defendant focuses on Plaintiff's purported failure to allege a disclosure of a suspected "violation of an Illinois or federal law, rule, or regulation" or "public corruption or wrongdoing." Specifically, Defendant argues that Plaintiff's May 18 email did not accuse Defendant of ill intent, wrongdoing, or illegal activity, nor assert that Defendant engaged in a scheme of intentional overstaffing. While the parties agree that Plaintiff's disclosure did not necessarily have to name the specific law or rule believed to be violated, Defendant argues that Plaintiff was merely conveying a staffing error and that without more, Plaintiff's email is not protected activity.

Plaintiff alleges that when she sent the May 18 email, she "had reasonable cause to believe that the information she disclosed regarding intentional overstaffing is [in] violation of a state or federal law, rule or regulation" and that she was attempting to "prevent defrauding the state, local, and federal governments." (Compl. ¶¶ 62 and 69, ECF No. 1-1.) She further alleges that her May 18 email "was disclosing or attempting to disclose public corruption or wrongdoing when she communicated overstaffing of LPNs" in an "effort to prevent defrauding the state, local, and federal governments." (*Id*. ¶¶ 112-113.)

As backdrop to the May 18 email, during the lead daily staffing call with Cook County on the day prior, Ms. Boone—the Cook County employee that oversees staffing at all vaccination sites—advised all LRNs from all sites, including Plaintiff, that vaccination numbers were dropping and that they should monitor and limit staffing and overtime hours. By that time, vaccinations had "decreased between 800 and 1200 per day" and "there were LPNs sitting around without services to render due to decreased vaccination needs." (*Id*. ¶¶ 25-27.) Further,

10

"[m]any LPNs were sent back to their hotels early yet paid for the full day." (*Id*. ¶ 27.)[5] Plaintiff emailed Ms. Kanumury of CCH asking whether LPNs are allowed personal days, informing her that four LPNs took a personal day on the preceding Saturday (their busiest day), letting her know that they were down five LPNs at the Site, and requesting that five LPNs be transferred to the Site. Ms. Kanumury pulled Major Didonato, the "National Guard Liaison with IEMA," into the email thread. (*Id*. ¶ 23.) Major Didonato emailed Plaintiff to determine if she needed five LPNs. On May 18, Plaintiff responded to Major Didonato, and the representatives of various other government agencies, that Defendant's LPN onsite supervisor told her the Site was being sent five backfill LPNs as well as six additional LPNs from the Tinley Park site. Plaintiff's email advised: "With our numbers being this low we will be way over staffed with LPNs if we get all 11." (*Id*. ¶ 29.)

At this stage, drawing inferences in Plaintiff's favor, she alleges she had reasonable cause to believe her disclosure of attempted overstaffing was disclosing a violation of federal or state law, and/or that she was attempting to disclose public corruption or wrongdoing. It is generally well known that government spending, particularly in contracts with third party vendors and suppliers, is vulnerable to fraud. The False Claims Act ("FCA") has, broadly speaking and through various amendments, prohibited defrauding the government since 1863. *See* 31 U.S.C. §§ 3729 – 3733.[6] Specifically, the FCA makes liable anyone who "knowingly presents, or causes

---

[5] While Plaintiff does not allege that she communicated with anyone about LPNs "sitting around," this context lends support to Plaintiff's allegation that she had "reasonable cause" to believe that Defendant's intent to overstaff the Site was attempting to defraud the government. It is not entirely clear from the complaint, however, why Plaintiff requested five additional LPNs at the Site if there were LPNs "sitting around" with nothing to do or being sent home. The Court can nonetheless infer from Plaintiff's allegations, in the light most favorable to her, that she requested the five additional LPNs because the Site was short-staffed on their busiest days due to LPNs taking personal days.

[6] Illinois also has a False Claims Act. *See* 740 ILCS 175/1, *et seq*.

11

to be presented, a false or fraudulent claim for payment or approval" to the government or who conspires to do so. *Id*. § 3729(a)(1)(A) and (C). That is not to say that Plaintiff here brings a *qui tam* proceeding under the FCA, nor must her alleged whistleblower disclosure expressly name the FCA.

Instead, Plaintiff need only allege reasonable cause for her belief that the May 18 email alleged a violation of a state or federal law, rule, or regulation, and/or that she was attempting to disclose public corruption or wrongdoing. Defendant argues that Plaintiff's May 18 email does not convey "ill intent" or a "scheme" of intentional overstaffing. (Df. Mem. at 5, ECF No. 20.) Defendant's argument does not move the needle. A person can "knowingly" present a false or fraudulent claim by acting in deliberate ignorance, or in reckless disregard for, the truth or falsity of information. *Id*. § 3729(b)(1)(A). Plaintiff's allegations that she believed she was disclosing, or was attempting to disclose, an attempt to defraud the government, thus rise above the speculative level. Accordingly, Plaintiff sufficiently pleads her Whistleblower Act claims under Section 15(b) and Section 20.1—whether the evidence will establish that Plaintiff's belief was reasonable is a question for the factfinder. *Brame v. City of N. Chicago,* 955 N.E.2d 1269, 1273 (Ill. App. Ct. 2011) ("Generally, reasonableness is a question of fact rather than a question of law, unless reasonable minds could not differ.").

Defendant's cited authority does not merit a different result. In *Post v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 18-CV-77, 2018 WL 5249231, at *4 (N.D. Ill. Oct. 22, 2018), the district court dismissed the plaintiff's Section 15(b) claim for failure to state a claim, but for reasons distinguishable from this case. There, unlike here, the court found that the alleged disclosure regarding a train derailment involved at most a failure to follow Metra protocol, and that such a protocol is not necessarily a government law, rule, or regulation. *Id*. The court further

found that "even if the derailment did involve illegal activity, [the plaintiff] does not allege that he knew that, or reasonably believed it, or included that information in his" disclosure. *Id*. Here, as stated above, Plaintiff adequately alleges facts from which she had reasonable cause to believe that she was disclosing illegal activity (attempt to defraud the government).

Defendant also points to two cases, *Beers v. E.R. Wagner Mfg. Co.*, No. 12-CV-8888, 2013 WL 1679403 (N.D. Ill. Apr. 17, 2013) and *Milsap v. City of Chicago*, No. 16-CV-4202, 2018 WL 488270, at *6 (N.D. Ill. Jan. 19, 2018), which it argues are examples of disclosures that fall within the meaning of the Whistleblower Act because one used the phrase "looks deceitful and borders on illegal" and the other discussed being pressured to lie on a police report. Those cases are not binding on this court, and nothing in them requires a disclosure to use specific phrases or describe a particular type of unlawful activity for it to fall within the confines of the Whistleblower Act.

*Beers* is further distinguishable because the plaintiff alleged a violation of a Whistleblower Act section not at issue here and that does not, on its face, require any type of disclosure by the employee. Rather, it prohibits employer retaliation "against an employee for refusing to participate in an activity that would result in a violation of a state or federal law, rule or regulation." *Beers*, 2013 WL 1679403 at *3 (quoting 740 ILCS 174/20) (internal punctuation omitted).

Finally, in *Hernandez v. Rhee*, No. 18-CV-07647, 2021 WL 3408510, at *22 (N.D. Ill. Aug. 4, 2021), the district court granted summary judgment for the defendant because, among other things, the plaintiff failed to present any evidence to support their belief that any proposed conduct was criminal in nature or that they made such a representation to the government. In this

case, and at this stage, Plaintiff need only raise her right to relief above the speculative level, which she does.

### B. Section 10 (Count II)

Next, Defendant argues that Plaintiff's alleged policy does not prevent employees from reporting violations of the law and so does not violate Section 10 of the Whistleblower Act. Both parties focus on Mr. Piper's statement, "No absolutely not, what happens in Favorite stays in Favorite." (Compl. ¶ 103, ECF No. 1-1.)

Defendant specifically argues that even if Mr. Piper's statement is taken as true, it does not run afoul of the Whistleblower Act because Plaintiff alleges that Mr. Piper made the comment in response to her request for a third party to sit in on a disciplinary meeting. As Defendant's argument goes, the policy alleged by Plaintiff is that Defendant prohibits third parties from sitting in on closed-door disciplinary meetings and does not prevent employees from contacting government agencies about wrongdoing nor regulate employee conduct before or after the closed-door meeting. Defendant offers no authority in support of their argument, and in fact there are few cases interpreting what constitutes a "rule, regulation, or policy" under Section 10. At least one court in this district suggests that unwritten policies or rules could satisfy Section 10. *Diadenko v. Folino*, 890 F. Supp. 2d 975, 993 (N.D. Ill. 2012), *aff'd*, 741 F.3d 751 (7th Cir. 2013).

Defendant's interpretation of Plaintiff's allegations, even if plausible, attempts to narrow the scope of the alleged policy in a way that the Court cannot accept as a basis for dismissal at this stage. Mr. Piper's statement must be viewed in the context set forth in Plaintiff's complaint. First, Plaintiff alleges that she had a history of communicating and coordinating with multiple parties, including IEMA and Cook County. On her daily staffing call with Cook County, the

14

Cook County employee that oversaw staffing at all vaccination sites advised all LRNs from all sites, including Plaintiff, that the vaccination numbers were dropping and that they should monitor and limit staffing and overtime hours. Plaintiff sent the May 18 email at issue to various government employees indicating that if Defendant supplied their intended number of LPNs to the Site, the Site would be "way over staffed." (Compl. ¶ 29, ECF No. 1-1.)

The next day Plaintiff received an email from an employee of Defendant informing her that it was not her "place to be the judge on if a site is over staffed[,]" demanding that Plaintiff "stop communicating with IEMA[,]" and informing her that if she has "any concerns like this again" to "[c]ome to me or one of the individuals that are CC['d] in the email[,]" all of which were Defendant employees. (*Id*. ¶ 31.) Within hours, Mr. Piper—Plaintiff's supervisor and Defendant's alleged "state representative"—went to the Site and requested a private conversation with Plaintiff. (*Id*. ¶ 34.) When Plaintiff requested that the Site director from Cook County be included, Mr. Piper responded: "No absolutely not, what happens in Favorite stays in Favorite." (*Id*. ¶ 35.)

During the meeting, Mr. Piper told Plaintiff she was receiving a written counseling regarding her "unprofessional behavior" for sending the May 18 email. (*Id*. ¶ 36.) Approximately three weeks later Plaintiff was demobilized before her crisis contract was scheduled to expire and further suspended from crises contracts, which pay higher rates than other nursing contracts, for six months. The only basis that Defendant provided to Plaintiff was the May 18 email, and at the same time Defendant told Plaintiff that it has a "zero tolerance policy." (*Id*. ¶¶ 50-51.) The Site director from Cook County told Plaintiff that he was unaware of any negative issues regarding her employment before he learned of her demobilization and that he had tried to convince Defendant to retain her, but that ultimately it was Defendant's decision.

15

Defendant's attempt to paint Mr. Piper's statement as a response solely to Plaintiff's request for a third party to sit in on a disciplinary meeting requires ignoring the alleged reason for and result of that disciplinary meeting, which this Court will not do at this stage. In light of the surrounding context, and drawing inferences in Plaintiff's favor, she has adequately alleged a "rule, regulation, or policy preventing[,]" through fear of reprimand, demobilization, and suspension, "an employee from disclosing information to a government or law enforcement agency." 740 ILCS 174/10.

Defendant also argues that Plaintiff fails to allege "reasonable cause to believe" that the May 18 email "discloses a violation of a State or federal law, rule, or regulation." *See* 740 ILCS 174/10. The Court disagrees, for the reasons set forth above with respect to Count I.

### IV. Conclusion

For the reasons discussed, the Court denies Defendant's motion to dismiss [19].

**SO ORDERED.**                                    ENTERED: March 10, 2023

                                    _____
                                    **HON. JORGE ALONSO**
                                    **United States District Judge**